**Betty KUC, Plaintiff-Appellee,**

v.

**MILL OWNERS MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

**No. 13682.**

United States Court of Appeals Seventh Circuit.

Nov. 14, 1962.

Lloyd M. Allen, South Bend, Ind., for appellant.

J. Chester Allen, South Bend, Ind., Allen & Allen, J. Chester Allen, Jr., Wulf Hass, South Bend, Ind., for appellee.

Before SCHNACKENBERG, KNOCH, and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Betty Kuc, plaintiff-appellee herein, brought action in the District Court, under an insurance policy issued by Mill Owners Mutual Insurance Company,[1] defendant-appellant herein, to recover a $12,500 default judgment in her favor, entered January 9, 1959, in the Circuit Court of St. Joseph County, Indiana, against Larry M. Riggs. Judgment for the plaintiff was entered in the District Court. This appeal followed.

The action arose out of an accident on January 20, 1956, in South Bend, Indiana, between the automobile in which plaintiff was riding and a Buick automobile driven by Mr. Riggs. This Buick automobile was covered by Mill Owners policy issued to Calvin Marbrieter.[2]

The following morning Mr. Riggs notified Mr. Marbrieter, who obtained an accident report form from his insurance agent. This form was filled out by Mr. Riggs and ultimately sent to Mill Owners. Mr. Marbrieter testified that he reported the loss as his own loss and as having occurred to his automobile. Mr. Riggs testified that Mr. Marbrieter had lent the automobile to him to drive home; that he had driven to his home, then to his son-in-law's home, then to a tavern, and that, on the way from there, the accident had occurred; that the automobile had been lent to him on other occasions to drive home.

With respect to his telephone report of the accident to the insurance agent, Mr. Marbrieter testified:

"Q. Did you tell him you had loaned the car to Larry Riggs?

"A. I believe I put it that way, that I wasn't the driver of it.

"Q. Did you tell him that Larry Riggs was loaned the car to go home with on the night of the accident?

"A. I don't know if I told him I had loaned it or not.

"Q. Might you have told him that?

"A. I might have."

After the accident, Mr. Marbrieter sold the Buick automobile for salvage to Cooperative Auto Parts Sales. At that time, Mr. Marbrieter signed, and acknowledged before a Notary Public, an affidavit of lost title. He also testified, however, that he had sold the automobile to Mr. Riggs prior to Christmas 1955 for $25 down with $25 to be paid later. Mr. Riggs vigorously denied any purchase of the automobile in his testimony in the District Court.

Plaintiff filed suit against both Mr. Riggs and Mr. Marbrieter in the St. Joseph Circuit Court. Mr. Marbrieter appeared by his attorney, Leon Kowalski.

---

1. Sometimes hereinafter called "Mill Owners."

2. Sometimes spelled: "Kalvin Marbeiter."

Later he was represented by the firm of Taylor and Allen, who were also counsel for Mill Owners. Mr. Lloyd M. Allen of that firm entered his appearance in the St. Joseph Circuit Court for Mr. Marbrieter only.

The complaint in the St. Joseph Circuit Court alleged that Mr. Riggs had been driving the Buick automobile with the knowledge and consent of Mr. Marbrieter, the owner. A demurrer was filed to the complaint with respect to Mr. Marbrieter on the ground that the complaint was insufficient as to him in that it did not raise the relationship of master and servant between Mr. Marbrieter and Mr. Riggs. The demurrer was sustained. No amended complaint was filed as to Mr. Marbrieter.

Mr. Riggs had retained John Schindler to represent him. Mr. Schindler informed Mill Owners that he had been retained by Mr. Riggs. The District Court found that although neither Mr. Marbrieter nor Mr. Riggs, or their counsel, forwarded any "suit papers" to Mill Owners, the latter had timely notice of the filing of the suit in the St. Joseph Court; that Mill Owners also had timely notice of the accident and had conducted its own investigation with respect to it.

A default judgment was entered against Mr. Riggs, in favor of plaintiff who then brought this action to recover from Mill Owners.

The Buick automobile driven by Mr. Riggs at the time of the accident was covered by Mill Owners Policy No. 3076973 issued to Mr. Marbrieter. The policy provided in part as follows:

"Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or with his permission."

and

"Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall: (a) defend any suit against the insured alleging such injury, * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *".

The District Court concluded that at the time of the accident involving plaintiff, Mr. Riggs was driving an automobile owned by Mr. Marbrieter with his permission, and that Mr. Riggs was an "insured" under the terms of the policy. The District Judge further held that by failing to forward the "suit papers" to Mill Owners, Mr. Riggs had failed to comply with the terms of the policy, but that timely notice of the action in the St. Joseph Circuit Court having been received, such failure to forward the papers was not a defense to the action in the District Court because there was no showing of prejudice. Weller v. Cummins, 330 Mich. 286, 47 N.W.2d 612 (1951). The contract in question, the insurance policy, was made in the State of Michigan, and the District Court applied the law of that state.

■ Mill Owners contends that the judgment on which the District Court suit was based fails to show that jurisdiction of Mr. Riggs was acquired by the St. Joseph Court which entered the judgment. At a pre-trial conference in the District Court on May 4, 1961, however, counsel for appellant stipulated that the judgment was entered against Mr. Riggs and that evidence of it might be shown without further proof of the authenticity of the record. It does not appear that this question was raised in the District Court. Mr. Schindler testified that he had entered an appearance for Mr. Riggs in the St. Joseph Court. In a letter addressed by counsel for Mill Owners to Mr. Schindler [Plaintiff's Exhibit #24] we find the statement:

"* * * I observed that you had entered an appearance * * * on behalf of Larry Melvin Riggs."

Appellant argues that admission of Plaintiff's Exhibits 1 to 10, inclusive, constituted error. Plaintiff's Exhibits 1 to 9, inclusive, were letters dated February 15, March 30, July 11, August 22, September 12, September 26, November 15, and November 30, 1956, and January 7, 1957, from Michigan Claim Service Inc. of Lansing, Michigan, to Mill Owners, reporting on investigation and negotiation carried on with respect to the accident here involved. Plaintiff's Exhibit #10 was the report of the accident filled out and signed by Mr. Riggs. These documents were all relevant to the defense that "suit papers" had not been forwarded in compliance with the terms of the policy and bore on the issue of whether or not Mill Owners had suffered any prejudice from such failure of compliance and asserted lack of cooperation from Mr. Riggs.

Appellant argues that it was prejudiced further by the fact that Mr. Schindler was permitted to claim attorney-client privilege in the course of his testimony in the District Court. The record shows that there was colloquy concerning the application of the privilege, but that in nearly every instance doubts of its application were resolved in favor of the examiner and the questions were answered. The record shows that the District Court sustained an objection to one question on the basis of the attorney-client privilege. On cross-examination, Mr. Schindler was asked if Mr. Riggs had ever refused to attend any trial or hearing. Mr. Schindler stated that he never refused. On re-direct examination Mr. Schindler was asked:

"Q. You say he never refused; was that because you couldn't contact him to notify him?

"A. I had no response to my notices."

On re-cross examination Mr. Schindler testified to a letter received from Mr. Riggs and stated further that two of his communications addressed to Mr. Riggs were returned undelivered. Then on further re-direct examination, Mr. Schindler was asked by Mr. Lloyd Allen, counsel for Mill Owners:

"Did Mr. Riggs ever notify you of any change of address from the time of your employment in connection with the law suits which you described * * *?

"The Witness: If it please the Court, it gets into the shady area that I am worried about.

"The Court: I think it does. I am going to say that an objection is raised by the witness and is sustained by the Court."

Mr. Riggs himself was a witness in the District Court. He testified that he was never requested by his counsel or by counsel for Mill Owners to go anywhere for examination. We must disagree with appellant's characterization of the District Court's ruling as prejudicial error.

Appellant also contends that this action could be maintained in the District Court only after plaintiff had execution issued against Mr. Riggs and returned unsatisfied because of his insolvency or bankruptcy, and that there is no evidence in the record to show that these prerequisite conditions were fulfilled as required by the statutes of the State of Michigan, where the contract was made. It does not appear that this specific objection was raised in the District Court. There is a reference to a similar Indiana statute in the brief filed in support of a motion to dismiss (the original complaint) which was filed by Mill Owners in the District Court, but which was withdrawn at Mill Owners request, at a pre-trial conference on December 24, 1959. On the same day, the plaintiff filed her amended complaint to which Mill Owners filed its answer. In the opening statement of its counsel in the District Court, Mill Owners indicated that the entire matter hinged upon the extent of the coverage afforded by the omnibus clause, and contended that, in any case, Mr. Riggs had failed to comply with the policy provisions.

Appellant also argues that the District Court assumed an essential element: the amount of coverage; that the judgment exceeds the coverage afforded by the policy as indicated in answers to requests for admissions. We have scrutinized these answers but do not find any such clear indication. Furthermore in responding to the District Court's order to produce the policy in question, Mill Owners filed a blank specimen copy [Plaintiff's Exhibit #11]. In oral argument before this Court, counsel for Mill Owners explained that the original policy was not in defendant's possession. No explanation was given for failure to fill in the blank spaces with such information as was available to Mill Owners.

■ As stated above, there was a sharp conflict in the testimony concerning the ownership of the Buick automobile and the conditions under which Mr. Riggs was operating it at the time of the accident. The experienced District Judge heard the witnesses and found that at the time of the accident the automobile was owned by Mr. Marbrieter and was driven by Mr. Riggs with Mr. Marbrieter's permission. Our study of the record satisfies us that these findings are not clearly erroneous and may not be set aside. Federal Rules of Civil Procedure, No. 52(a).

■ We agree with the District Court that Mill Owners received timely notice of the institution of the lawsuit in the St. Joseph Court and was in no way prejudiced by the failure to forward "suit papers." Mill Owners points out that Mr. Riggs made no request for defense by Mill Owners, but on the contrary, engaged his own counsel (as incidentally did Mr. Marbrieter prior to Mill Owners entry into the case in his behalf) and permitted default judgment to be entered. There was nothing to suggest that Mr. Riggs might anticipate a favorable reply to his request for a defense. From the outset Mill Owners denied that the policy afforded any coverage to Mr. Riggs. In Mr. Lloyd M. Allen's letter of September 30, 1958, to Mr. Schindler [Plaintiff's Exhibit #24], he states:

"This will confirm our several conversations * * *. I further explained to you that it was the position of the Mill Owners Mutual Insurance Company that there is no coverage afforded your client Larry Melvin Riggs by any policy of insurance with the Mill Owners Mutual Insurance Company. I further requested that there be a conference with you and your client and myself in order that I might explain our position in the matter."

We have considered with care all other points raised by appellant but find them lacking in merit. The judgment of the District Court is affirmed.

Affirmed.